Ulli DODD and Betty Waddell, Plaintiffs,

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION, Defendant.**

Civ. A. Nos. 93–964–A, 93–975–A.

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 30, 1993.

Richard Dennis Carter, Hudgkins, Carter & Coleman, Alexandria, VA, for plaintiffs.

Charles Steele and Mary Atchley Jester, Foley & Lardner, Washington, DC, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter is before the Court on cross-motions for summary judgment. Both plaintiffs filed actions against the defendant seeking a determination of their coverage under a health insurance policy; these actions have been consolidated. Plaintiffs suffer from metastatic breast cancer, a disease which is almost invariably fatal without dose-intensive chemotherapy. Their physicians have recommended that they receive high-dose chemotherapy with autologous hematopoietic support, popularly referred to as a bone marrow transplant (HDCT–ABMT).

The parties have stipulated that there are no material facts in dispute, and the only issue in the case is the interpretation of the coverage under the policy. Grants of summary judgment motions are warranted if the pleadings, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving will prevail as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is a genuine issue as to a material fact only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiffs are insured through the Blue Cross and Blue Shield Federal Employee Program. Under the FEHB program, Blue Cross has entered into a contract with the Office of Personnel Management (OPM) to provide benefits, and the Service Benefit Plan reflects the FEHB coverage being offered pursuant to that contract. The Plan contains two provisions which impact upon coverage for HDCT–ABMT for breast cancer. The first is to be found at page 22 of the Plan:

What is not covered:

Services or supplies for or related to surgical transplant procedures for artificial or human organ/tissue transplants not listed as specifically covered such as breast cancer (see page 44 for non-FEHB benefits). Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.

In addition, there is a second provision, which appears on page 44 of the Plan. Specifically listed as a "non-FEHB benefit" is the following:

ABMT for Breast Cancer—The Blue Cross and Blue Shield Services Benefit Plan participates in clinical trials for autologous bone marrow transplants with high dose chemotherapy for breast cancer. Contact the local Blue Cross and Blue Shield Plan in the area you reside for information.

The plaintiffs requested pre-authorization of nonrandomized, phase II clinical trials of HDC–AR for breast cancer conducted outside of the scope of the National Cancer Institute ("NCI") Trials or the Demonstration Project. Ms. Waddell submitted her initial request in March of 1993, Ms. Dodd in January of 1993. Each of plaintiff's requests was denied in reliance upon the Service Benefit Plan's specific exclusion for HDC–AR for breast cancer. Each plaintiff was notified about the Demonstration Project in correspondence advising each about the claim determination. Inquiry was made of the Association on behalf of Ms. Waddell, who was sent information detailing the NCI Trials. No inquiry to the Association's Helpline was made by Ms. Dodd. Neither plaintiff has chosen to pursue enrollment in the NCI Trials, but have instead filed suit in an effort to obtain benefits for HDC–AR.

■ Plaintiffs first contend that the notification of the Demonstration Project on page 44 of the brochure contractually obligates payment for all clinical trials. Second, plaintiffs contend that the Association has violated the Rehabilitation Act because the specific exclusion of benefits for HDC–AR is not in compliance with the Act.

OPM has interpreted the express exclusion of HDC–AR for breast cancer in the Service Benefit Plan so as to exclude all benefits for HDC–AR for breast cancer. OPM has consistently applied this interpretation in numerous claim disputes with full knowledge that the exclusion applies to myriad clinical trials of HDC–AR operating across the country. Plaintiffs cannot directly challenge the existence or applicability of the express exclusion nor the correctness of OPM's decisions applying that exclusion to their requests for prior approval of benefits under the Plan because the Fourth Circuit has recently ruled that the meaning of the exclusion is clear, and that OPM acted properly and in accordance with the contract and the regulations when it interpreted the exclusion so as to exclude benefits for HDC–AR for breast cancer. *Caudill v. Blue Cross Blue Shield of North Carolina*, 999 F.2d 74, 79–80 (4th Cir.1993).

In *Caudill*, the Fourth Circuit upheld the decision of OPM in denying a claim for benefits for HDC–AR that is extremely similar to the requests for prior approval submitted by the plaintiffs in this case. The Court in *Caudill* held that the exclusionary language in the Plan is clear and unambiguous, and that OPM's decision was rational and proper under the Administrative Procedure Act. *Id.* The Court concluded, "OPM's decision is not only rational under the terms of the Service Benefit Plan, but appears to be the only logical interpretation of the policy." *Id.*

Contrary to plaintiffs' position, the NCI Trials statement cannot be reasonably construed as a benefit provision. It is plainly a notice and invitation to inquire further about those clinical trials in which the Service Benefit Plan "participates" through the Demonstration Project—the NCI Trials. A fair reading of this statement is that it is a notice of limited effect. Second, the notice does not contain a grant of benefits or promise to pay for anything. At most, it is an invitation to inquire further about those clinical trials that the "Service Benefit Plan participates in." The enrollee must inquire further to find out critical information: which trials are referred to; which medical centers conduct the trials; the terms of participation and eligibility for the trials; and the financial requirements. The NCI Trials Notice is not a grant of unlimited coverage for HDC–AR and cannot be read in isolation from the remainder of the Service Benefit Plan and OPM's administrative practice.

■ Even if the notice language was ambiguous, this Court would defer to OPM's interpretation of the provision because it is not plainly erroneous and is consistent with the provision. The district courts should apply deferential review to OPM's interpretation of its own notice language and refuse to compel payment of benefits for all clinical trials. *Myers v. United States*. 767 F.2d 1072, 1074 (4th Cir.1985). In *Myers*, the Court recognized that the Statement of Benefits is a regulatory document issued by OPM in accordance with delegated authority from Congress, and that same standard of review should be applied to Statement of Benefits that applies to other agency promul-

gations. *Id.* The Court adopted the "plainly erroneous" standard of review, holding it was "required to defer to an administrative agency's interpretation of its own regulations unless plainly erroneous or inconsistent with the regulation." *Id.; see also Caudill,* 999 F.2d at 80 (affirming that FEHB Statements of Benefits are regulations to be reviewed under "plainly erroneous" standard of review and warning that Court "must not substitute its own judgment for that of the administrative agency.").

Well settled principles of administrative law require that a court examining the meaning of an administrative promulgation look only to the plain meaning of the words used and the construction placed upon those words by the agency. *Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). If the meaning of the regulation cannot be ascertained from the provision itself, the interpretation of the agency is controlling unless plainly erroneous. *Id.*

In this case, OPM's interpretation of the NCI Trials notice is entitled to deference by this Court because it is neither plainly erroneous nor inconsistent with the regulation. The Fourth Circuit has recognized that the burden of demonstrating that an agency's interpretation of its regulations is plainly erroneous cannot be met even by a showing that there is an interpretation of the regulation in question that is "more reasonable" than the agency's. *Allen v. Bergland,* 661 F.2d 1001, 1004–05 (4th Cir.1981).

■ Plaintiffs raise a secondary issue in conjunction with the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (1973). They argue that the exclusion of coverage on page 22 of the Plan runs afoul of the Rehabilitation Act by providing HDCT–ABMT for some forms of cancer (e.g., leukemia, neuroblastoma, testicular cancer), but not others (e.g., breast cancer). Such a claim, however, cannot be sustained against the Association. Plaintiffs' only remedy under section 504 is against OPM.

Section 504 of the Rehabilitation Act does not apply, by its terms, to the Association because its relationship with OPM and to the Service Benefit Plan is through a government procurement contract. When such a contract is involved, section 504 governs only the OPM, as the contracting agency. OPM's responsibility to comply with section 504 is entirely consistent with its responsibility under the FEHBA to determine which benefits and exclusions apply in the Service Benefit Plan. Therefore, under both the Rehabilitation Act and the FEHBA, Congress has assigned to OPM sole decision-making authority and responsibility over FEHB contracts. The structure of the Rehabilitation Act is completely consistent with the FEHBA scheme. Under section 504 of the Act, when a government procurement contract is involved, it is the procuring agency (OPM), and not the contractor (the Association), that is responsible for compliance.

In *Doe v. Devine,* 545 F.Supp. 576, 585 (D.D.C.1982), *aff'd on other grounds,* 703 F.2d 1319 (D.C.Cir.1983), a related case, the plaintiffs claimed that the decision to reduce mental illness benefits in the Service Benefit Plan violated section 504 because the cuts discriminated against the mentally handicapped. In rejecting the plaintiffs' claims on the merits, the Court held that it was OPM's responsibility, and not the Association's, to comply with section 504. *Id.* Therefore, plaintiffs in this case have no Rehabilitation Act remedy against the Association.

■ Moreover, plaintiffs have failed to show that the Association is the proper defendant on a claim of discrimination in the Service Benefit Plan. Plaintiffs cite portions of the Americans with Disabilities Act ("ADA") in support of their argument that the Association is liable for alleged discriminatory exclusions in the Service Benefit Plan. However, the ADA, by its terms, does not apply here. The ADA defines a "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2) (1993). Because the Association is not an employer of federal employees enrolled in the Service Benefit Plan, it may not be sued under the ADA. The OPM is also excluded from the scope of the ADA's coverage. The Act defines "employer" to exclude the United States. *Id.* § 12111(5).

Plaintiffs cannot directly challenge the express exclusion for HDC–AR or OPM's interpretation of that exclusion because *Caudill*, a controlling Fourth Circuit decision, upholds the exclusion of coverage for HDC–AR for the treatment of breast cancer, as well as OPM's interpretation of the provision on page 44 of the Plan. For the foregoing reasons, this Court will grant defendant's Motion for Summary Judgment.

An appropriate Order shall issue.

### ORDER

For reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the defendant's Motion for Summary Judgment is GRANTED, the plaintiffs' Motion for Summary Judgment is DENIED, and this case is DISMISSED.