Jane **PRESTA**, Plaintiff,

v.

**PENINSULA CORRIDOR JOINT POWERS BOARD**, National Railroad Passenger Corporation, et al., Defendants.

No. C–96–3607 TEH.

United States District Court,
N.D. California.

Aug. 12, 1998.

Barbara M. Cohen, Jill L. Friedman, Gough & Cohen, Oakland, CA, David B. Oppenheimer, San Francisco, CA, for Plaintiff.

Bruce Legernes, Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, CA, for Defendants.

*ORDER*

HENDERSON, Chief Judge.

Plaintiff Jane Presta asserts that she is a disabled person suffering from a chronic pain disorder, thoracic outlet syndrome, that severely limits and slows her mobility. Presta claims that Defendants Peninsula Corridor Joint Powers Board and National Railroad Passenger Corporation ("Amtrak") repeatedly discriminated against her because of this disability by denying her sufficient time to board and disembark the railroad trains they operate, and by treating her rudely when she asked for assistance. In this lawsuit, Presta brings claims of common law negligence, and violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the California Civil Code § 54 ("California Public Accommodations Act") and California Civil Code § 51 ("Unruh Civil Rights Act").

The parties have submitted proposed jury instructions. Consideration of these instructions has brought to the Court's attention what appears to be a matter of first impression: whether a plaintiff bringing a claim of discrimination on the basis of disability must prove discriminatory intent on the part of a defendant for liability to attach under the Unruh Civil Rights Act. Having considered arguments submitted in letter briefs by both parties, and good cause appearing, the Court now holds that in a claim for discrimination on the basis of disability brought under the Unruh Act, a plaintiff need not prove that the defendant harbored discriminatory intent.

In 1959, responding to a series of appellate court decisions that narrowly construed the civil rights provisions of California's then-existing public accommodation statute, the California Legislature passed the Unruh Civil Rights Act with the intent of "banish[ing discrimination] from California's community life." *Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal.3d 72, 75, 219 Cal.Rptr. 150, 707 P.2d 212 (1985). As it was originally enacted, the Unruh Act guaranteed to all persons freedom from discrimination on the basis of "race, color, religion, ancestry, or national origin," and full and equal access to "all business establishments of any kind whatsoever." *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1151, 278 Cal.Rptr. 614, 805 P.2d 873 (1991). The statute was expanded in 1974 to prohibit discrimination on the basis of sex, and was, in 1987, further amended to prohibit discrimination on the basis of "blindness or other physical disabilit[y]." *Id.* In 1992, that amendment was simplified to prohibit discrimination on the basis of "disability," and, more importantly, a clause was added to provide that any violation of the Americans with Disabilities Act also constituted an Unruh Act violation.[1] *Id.* The addition of this clause forms the basis of the question now presented to this Court.

The 1992 amendment to the Unruh Act reads, in full, "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section." CAL.CIVIL CODE § 51. Under its provisions, all violations of the ADA are actionable under the Unruh Act. "The plain language of the amendment clearly incorporates the entire ADA into § 51 ... The only plausible interpretation is that the amendment makes § 51 coextensive with the ADA." *McCormack v. Advanced Micro Devices,* 1994 WL 715655, *2 (N.D.Cal.). Because the Unruh Act has adopted the full expanse of the ADA, it must follow, that the same standards for liability apply under both Acts. Accordingly, if Plaintiff need not demonstrate discriminatory intent to prove a claim under the ADA, she

---

1. The Unruh Act now reads, in pertinent part:

   All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

   This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or disability.

   . . .

   A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section. CAL.CIVIL CODE § 51.

similarly need not show such intent to prevail under the Unruh Act.

Defendants have proposed to the Court a jury instruction which directs that Plaintiff must "demonstrate by a preponderance of the evidence that:

1. [She] has a disability that entitles her to reasonable accommodation . . . ,

2. Defendants discriminated against [her] because of that disability; and

3. The discrimination was unreasonable, arbitrary, or invidious."

Defendant's Special Instruction No. 8. In an accompanying letter brief, Defendants further discuss their interpretation of the Unruh Act, asserting that the Act requires Plaintiff to prove Defendants' intent to implement policies that deny her the privileges of their railroad services. Plaintiff argues in response that she need not prove that Defendants harbored any form of discriminatory intent. Rather, Plaintiff contends she must show only that she "is a person with a disability, and that Defendants denied her full and equal accommodations, advantages, facilities, privileges, or services because of her disability." Plaintiff's Proposed Jury Instruction No. 7. The Court finds that to effectuate the plain meaning of the Unruh Act under its 1992 amendment, Plaintiff's interpretation must prevail.

Title II of the Americans with Disabilities Act mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision guards against both intentional discrimination and simple exclusion from services resulting not from intentional discriminatory acts, but rather from inaction, thoughtlessness, or equal treatment when particular accommodations are necessary. *See Crowder v. Kitagawa,* 81 F.3d 1480, 1483 (9th Cir. 1996). The statute's language demonstrates a recognition by Congress that discrimination against persons with disabilities differs from discrimination on the basis of, for example, gender, or race. Discrimination in the latter instances has been judicially defined as disparate treatment on the basis of a certain characteristic that identifies an individual as a member of a protected class. However, a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation. *Dunlap v. Association of Bay Area Governments,* 996 F.Supp. 962, 965 (N.D.Cal.1998). In the context of disability, therefore, equal treatment may not beget equality, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services that, by law, must be available to them.

California courts have clearly and repeatedly held that the Unruh Act is to be interpreted "in the broadest sense reasonably possible," so as to achieve its purpose of combating discrimination in all its forms. *Isbister,* 40 Cal.3d at 76, 219 Cal.Rptr. 150, 707 P.2d 212. *See Arnold v. United Artists Theatre Circuit, Inc.,* 866 F.Supp. 433, 437 (N.D.Cal.1994). Combating discrimination as it affects persons with disabilities requires recognizing, as Congress did in crafting the ADA, that often the most damaging instances in which rights of persons with disabilities are denied come not as the result of malice or discriminatory intent, but rather from benevolent inaction when action is required. Such discrimination may only be fought by a statute that prescribes liability without reference to an actor's intent. *See Boemio v. Love's Restaurant,* 954 F.Supp. 204, 207 n. 4 (S.D.Cal.1997). The Americans with Disabilities Act is such a statute. The California legislature, by incorporating into it the full expanse of the ADA, has made the Unruh Act such a statute as well. Accordingly, the Court holds that Plaintiff need not demonstrate that Defendants harbored discriminatory intent as an element of her claim of disability discrimination under the Unruh Civil Rights Act.

**IT IS SO ORDERED.**