Filed 8/28/14  Murillo v. Citrus College CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICARDO MURILLO, | B248201 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. KC062036) |
| v. | |
| CITRUS COLLEGE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Dan T. Oki, Judge.  Reversed and remanded.

Center for Disability Access and Russell Handy for Plaintiff and Appellant.

Walsh & Associates and Dennis J. Walsh for Defendants and Respondents.

The plaintiff Ricardo Murillo appeals a final judgment in favor of the defendants Citrus College and Citrus Community College District, following the trial court's order granting summary adjudication of the plaintiff's cause of action for violation of the American Disabilities Act (ADA).  We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, who is a quadriplegic individual, has been a student at the defendant Citrus College since the fall of 2008.  In September 2008, the plaintiff experienced symptoms of autonomic dysreflexia[1] and asked a nurse at the student health center on campus (Health Center) to help him take three medications by lifting the pills to his mouth.  The Health Center's staff would not provide this assistance and explained to the plaintiff that it was their policy not to administer medications to students.

On September 1, 2011, the plaintiff filed a complaint against the defendants for violations of the ADA, the Unruh Civil Rights Act, and the California Disabled Person Act.  On November 18, 2011, the plaintiff filed a first amended complaint asserting the same causes of action and alleging that, as a quadriplegic individual, "[h]e needs to take medication during the day, while at school . . . [but] cannot get the medication into his

---

[1]     We take judicial notice that autonomic dysreflexia is a syndrome common in people with certain spinal cord injuries in which there is a sudden onset of excessively high blood pressure.

mouth," and that "[he] has asked the defendant for minor assistance in doing this and been refused."[2]

On December 16, 2011, the defendants filed a motion to strike portions of the first amended complaint. On January 25, 2012, the trial court denied the motion, however, the trial court did not provide a time within which the defendants were to answer the complaint. No answer was filed.

On November 2, 2012, the defendants moved for "summary adjudication of issues" with respect to the following: "Plaintiff Cannot Establish That Denying Assistance with Medication is Discrimination[,]" and "Requiring The Student Health Center To Provide Assistance with Medication Is Not a Reasonable Modification of Health Center's Services[.]" The defendants argued that they had not discriminated against the plaintiff because the Health Center does not assist any student with taking his or her medication. The defendants also argued that assisting the plaintiff with his medication would amount to a "fundamental alteration" of the Health Center's services.

In support of the motion, the defendants submitted evidence that: (1) the Health Center provides "short-term acute episodic care" such as the "treatment of acute illness," immunizations, and "blood pressure and weight checks"; (2) the Health Center does not "treat or manage chronic diseases" such as quadriplegia; (3) the Health Center does not act as a first responder in the event of an emergency because its staff is not

---

[2]     The plaintiff also asserted claims based on the defendants' alleged failure to provide adequate access to the Health Center to persons with disabilities, however, those claims are not subjects of this appeal.

3

available at all times during a school day; (4) the Health Center does not provide "specialized service or care for any student"; and (5) the Health Center's policy is "not to assist any student with taking medications."

In opposition, the plaintiff argued that the Health Center should provide the plaintiff with occasional assistance with taking his medication as a reasonable modification to their general policy of not assisting students with medications. The plaintiff presented evidence that (1) "typically, [he] can take [his] medications outside of school hours[,] [b]ut every now and then, I need to take medication during school hours" including when he "feel[s] the rising symptoms of possible autonomic dysreflexia," and (2) under those circumstances, he "need[s] minor physical assistance in getting the pills to [his] mouth."

The court granted the motion with respect to the two issues referenced above and, in its analysis, addressed only the plaintiff's cause of action for violation of the ADA. The court found that the defendants were "under no duty to administer medication to a disabled student as a 'reasonable accommodation' . . . under the ADA." The trial court entered a stipulated judgment in favor of the defendants. The plaintiff timely appealed.

### *CONTENTIONS*

The plaintiff contends that the Health Center discriminated against him because assisting him with lifting pills to his mouth was a reasonable modification to the Health Center's general policy of not administering medications to students.

4

## DISCUSSION

1.      *Summary Adjudication*

"A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty, if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs.  A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."  (Code of Civ. Proc., § 437c, subd. (f)(1).)

"Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law.  [Citation.]"  .]  (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1416.)  We review an order granting or denying summary adjudication de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  In our review, we "liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party.  [Citation.]"  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

5

2.  *The Defendants Were Entitled to Move For Summary Adjudication Before Filing An Answer*

We first address the defendants' failure to file a pleading in this case. When a motion to strike a complaint is denied, the court shall allow the defendant time to file an answer. (Code of Civ. Proc., § 472a, subd. (d).) No default may be taken against the defendant during the time allowed by the court. (Code of Civ. Proc., § 586, subd. (a)(2).) Here, after denying the motion to strike, the trial court did not provide any time period within which the defendants had to file their answer, therefore, although the defendants failed to file an answer, they were not in default.

In addition, a defendant may move for summary judgment even if it has not yet filed an answer. (Code of Civ. Proc., § 437c, subd. (a).) Accordingly, here, it was permissible for the defendants to file a motion for summary adjudication prior to an answer. However, the defendants were not entitled to move for summary adjudication of any affirmative defense to the complaint as no affirmative defenses had been alleged. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 ["the pleadings determine the scope of relevant issues on a summary judgment motion".)

3.  *Summary Adjudication of the First Cause of Action Was Improper*

A party may generally only move for summary adjudication of "one or more causes of action within an action, one or more affirmative defenses, one or more claims

6

for damages, or one or more issues of duty."[3]  (Code of Civ. Proc. § 437c.)  Here, although the defendants improperly moved for summary adjudication of certain *issues* instead of causes of action, we deem the trial court to have granted summary adjudication as to the first cause of action for violation of the ADA as this is the only cause of action addressed in the order and it was disposed of by the court's ruling.

The ADA governs discrimination in employment, public services, and public accommodations.  (42 U.S.C. §§ 12111, et seq.)  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  (42 U.S.C. § 12132.)

" 'To state a claim of disability discrimination under Title II [of the ADA], the plaintiff must allege four elements:  (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.' [Citation.]"  (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1252.)  "A public

---

[3]      The exception to this rule is set forth in subdivision (s) of Code of Civil Procedure, section 437c:  "a party may move for summary adjudication of *a legal issue* . . . only upon the stipulation of the parties . . . . "  (Emphasis added.)

entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." (28 C.F.R. § 35.130, subd. (b)(7).)

"[T]he determination of what constitutes [a] reasonable modification is highly fact-specific, requiring case-by-case inquiry." (*Crowder v. Kitagawa* (9th Cir. 1996) 81 F.3d 1480, 1486; see also *Wong v. Regents of University of California* (9th Cir. 1999) 192 F.3d 807, 818 ["Because the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the [possible] accommodations . . . . "]) " '[M]ere[] speculat[ion] that a suggested accommodation is not feasible' falls short of the 'reasonable accommodation' requirement; the Acts create 'a duty to "gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are *necessary* to [accommodate the individual]." ' [Citation.]" (*Wong, supra,* 192 F.3d at p. 818.)

Here, the plaintiff contends that the Health Center discriminated against him by refusing to assist him with his medications because providing such assistance to him was a reasonable modification to the Health Center's general policy of not administering medication to students. The defendants argue that the proposed

8

modification is unreasonable[4] because it required a level of staff assistance that the Health Center could not provide.

The defendants provided in their separate statement that "the [H]ealth [C]enter's staff of medical professionals . . . are not available at all times during the school day." The supporting evidence for this fact was a document describing the services provided by the Health Center which listed its hours as "Monday-Thursday 8:30 AM to 4:30 PM" and "Friday - 8:00 AM to 12 Noon." There was no evidence provided as when the "school day" began and ended such that the court could establish whether the Health Center was, in fact, not open during times when the students were on campus.

The separate statement also provided that a "medical professional may not always be present at all hours of the school day." The supporting evidence for this fact was a statement by the Health Center's "head nurse" that "the health center does not have the staffing to ensure that a medical professional will be present during the school day. . . ." However, this individual also stated that she worked full-time at the Health Center. In addition, as stated above, there was no evidence as to what hours comprised

---

[4] The defendants also argue that the modification would amount to a "fundamental alteration" of the Health Center's services. Whether an accommodation fundamentally alters a service is an affirmative defense under the ADA. (*Lentini v. Calif. Center for the Arts* (9th Cir. 2004) 370 F.3d 837, 845.) Here, the defendants did not assert such a defense as they never filed an answer, and, therefore, the defense was not a proper ground upon which the defendants could move for summary adjudication. Accordingly, we decline to address this argument. We also note that "whether an accommodation fundamentally alters [a program] is an intensively fact-based inquiry" generally inappropriate for summary judgment. (*Martin v. PGA Tour, Inc.* (9th Cir. 2000) 204 F.3d 994, 1001; see also *Chalk v. U.S. Dist. Court Cent. Dist. Of California* (9th Cir. 1988) 840 F.2d 701, 705.)

a "school day." This evidence was insufficient to establish that the Health Center did not have a medical professional on staff at all times.

Furthermore, there were triable issues of fact as to whether the plaintiff's proposed accommodation − assistance with lifting a pill to his mouth − required a medical professional's assistance. In fact, the defendants, in their separate statement, stated that the plaintiff was told, when he asked the Health Center to assist him with taking his medication, that "he could inquire with the [college's Disabled Students Programs and Services (DSP&S)] department." The alleged supporting evidence for this statement does not show that the plaintiff was ever told this.[5]

The defendants also contend that the proposed modification was unreasonable because it would require the Health Center to assist every student with every kind of medication. This argument ignores the fact that the plaintiff is seeking an "accommodation" and not a change to the Health Center's general policies with respect to other students. "Discrimination may be shown precisely where the defendant treated plaintiff *the same* as everyone around her, despite her need for reasonable accommodation." (*Dunlap v. Assn. of Bay Area Governments* (N.D. Cal. 1998) 996 F.Supp. 962, 966.) Accordingly, "a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation." (*Presta v. Peninsula Corridor Joint Powers Bd.* (N.D. Cal. 1998) 16 F.Supp.2d 1134, 1136.) The defendants' argument that the requested

---

[5]    However, if the DSP&S department could assist the plaintiff with taking pills, it does imply that a medical professional is not necessary to perform such an act.

accommodation would require that they change their services with regard to every student is not supported by the ADA, and it is unclear on what other ground the defendants believe they would need to provide every student with this service.

The defendants also argue that the proposed accommodation is not reasonable because there are risks involved in administering medications that were prescribed by another doctor, namely, that the wrong medication, wrong dosage, or wrong combination of medications could be administered. The defendants are entitled, under the ADA's implementing regulations, to "impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities[,]" so long as such "safety requirements are based on actual risks, not mere speculation, stereotypes, or generalizations about individuals with disabilities." (28 C.F.R. 35.130(h).) However, here, there are triable issues of fact as to whether the defendants' safety concerns could be alleviated by giving the Health Center copies of the plaintiff's prescriptions or requiring the plaintiff to execute a waiver with respect to claims that could arise as a result of the Health Center's assisting with administering his medication.

Accordingly, the evidence demonstrated that there were triable issues of fact as to whether the Health Center discriminated against the plaintiff by refusing to provide him with a reasonable accommodation. Therefore, the trial court erred in granting summary adjudication of the cause of action for violation of the ADA.

11

## DISPOSITION[*]

The judgment is reversed and the matter is remanded with directions for the trial court to vacate its order granting summary adjudication and to enter a new order denying summary adjudication.  The plaintiff is awarded his costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KLEIN, P. J.

WE CONCUR:

KITCHING, J.

---

[*]    Due to the unavailability of the third member of the panel which was assigned to hear this matter, this opinion is being filed with the concurrence of the two remaining members of the panel.  (Cal. Const., art. VI, § 3 ["Concurrence of 2 judges present at the argument is necessary for a judgment"]; see, e.g., *People v. Castellano* (1978) 79 Cal.App.3d 844, 862.)